**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

OCCIDENTAL EXPLORATION AND
PRODUCTION COMPANY,

Plaintiff,

v.

ENCANA CORPORATION and ENCANA
INTERNATIONAL FINANCE (BERMUDA)
LIMITED,

Defendants.

Case No.  1:19-cv-0717 (AJN)

**<u>COMPLAINT</u>**

Date:  February 25, 2019

David Elsberg
Michael Duke
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Telephone: 212-390-9000
E-mail: delsberg@selendygay.com
            mduke@selendygay.com

*Attorneys for Occidental Exploration and*
*Production Company*

Plaintiff Occidental Exploration and Production Company ("Oxy"), through its counsel, Selendy & Gay PLLC, for its complaint against Encana Corporation and Encana International Finance (Bermuda) Limited (collectively, "Encana"), alleges as follows:

## NATURE OF ACTION

1.      Oxy and Encana are not parties to an agreement to arbitrate disputes between them. There is no arbitration agreement that is signed by Oxy and Encana.  There are no other facts that could justify a finding that Oxy and Encana agreed to arbitrate.

2.      Nevertheless, Encana has sought to force Oxy to arbitrate disputes between them.

3.      This is an action for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02 and Federal Rules of Civil Procedure 57 and 65.

4.      Oxy seeks an order (a) declaring that Encana does not have any right to arbitrate against Oxy and (b) enjoining Encana from proceeding to arbitrate against Oxy, including in the currently pending arbitration in New York, New York before the American Arbitration Association International Centre for Dispute Resolution, captioned *Andes Petroleum Ecuador Ltd. v. Occidental Exploration and Production Co.*, Case No. 01-17-00004-0048 (the "Oxy-Andes Arbitration").

## THE PARTIES

5.      Oxy is an energy exploration company organized under the laws of California with a principal place of business in Houston, Texas.

6.      Encana Corporation is an oil and gas company organized under the laws of Canada with a principal place of business in Alberta, Canada.  Encana Corporation was created in 2002, resulting from a merger between PanCanadian Energy Company Ltd. and Alberta Energy Company Ltd.

7.      Encana International Finance (Bermuda) Limited is a company organized under the laws of Bermuda with a principal place of business, upon information and belief, in Hamilton, Bermuda.

## JURISDICTION

8.      This Court has federal question subject matter jurisdiction pursuant to 9 U.S.C. § 203 and 28 U.S.C. § 1331 because this suit is a civil action concerning a putative arbitration agreement falling under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), as implemented through 9 U.S.C. §§ 201-08.

9.      This Court also has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because (1) Oxy is a citizen of California and Texas and Encana Corporation and Encana International Finance (Bermuda) Limited are both citizens of foreign states and (2) the amount in controversy exceeds $75,000.

10.     This Court has personal jurisdiction over Encana Corporation and Encana International Finance (Bermuda) Limited because this lawsuit arises out of specific acts undertaken by Encana Corporation and Encana International Finance (Bermuda) Limited in the Southern District of New York, including their attempt to force Oxy to arbitrate in New York, New York.

## VENUE

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this lawsuit occurred within this judicial district.

## FACTUAL ALLEGATIONS

12.     There is no agreement between Oxy and Encana to arbitrate disputes between them. Oxy and Encana are not parties to a signed agreement to arbitrate disputes between them. There

are no facts that could justify the conclusion that Oxy and Encana agreed to arbitrate disputes between them.

### Andes Cannot Assign Rights Under The Oxy-Andes Farmout Agreement Without Oxy's Written Consent

13.     Oxy agreed to arbitrate *not* with Encana, but with a *different* entity called Andes Petroleum Ecuador Ltd. ("Andes"), in an agreement signed by Oxy and *Andes* (not Encana).[1] This agreement (the "Oxy-Andes Farmout Agreement") provided Andes with a 40% economic interest in certain oil exploration done by Oxy in Ecuador.  In return, Andes agreed, among other things, to bear 40% of Oxy's expenses.

14.     The Oxy-Andes Farmout Agreement contains an arbitration clause, which states:

> If [Oxy] and [Andes] or their respective successors, assigns or legal representatives are unable to amicably resolve any dispute or difference arising under or out of, in relation to or in any way connected with, [] this Agreement . . . or [] any operations, transactions, actions or inactions conducted, arising under or out of, in relation to or in any way connected with this Agreement, . . . such matter shall be finally and exclusively referred to and settled by arbitration under the Commercial Arbitration Rules of the American Arbitration Association . . . .

Ex. A § 7.01.[2]

15.     The Oxy-Andes Farmout Agreement also restricts Andes's ability to assign any part of the Oxy-Andes Farmout Agreement.  Specifically, Section 8.03 of the Oxy-Andes Farmout Agreement (the "Andes Anti-Assignment Clause") provides that (a) Andes shall not assign the Oxy-Andes Farmout Agreement "in whole or in part, save to an affiliate of such party, *without the*

---

[1] When Oxy and Andes signed the Oxy-Andes Farmout Agreement, Andes was named City Investing Company Limited.  Andes has had various names as its ownership has changed.  For ease of reference, this Complaint will refer to that entity by its current name, Andes, regardless of the entity's name at the time of the described events.

[2] "Ex." refers to the exhibits attached to the David Elsberg Declaration dated February 24, 2019.

*written consent* of [Oxy]," and (b) "any purported assignment in violation hereof shall be null and void." Ex. A § 8.03 (emphasis added).

16.     The Oxy-Andes Farmout Agreement also states that "[i]n the event either party consents to a proposed assignment or in the case of an assignment to a party's affiliate, such *assignee must agree to be expressly bound hereby*." *Id.* (emphasis added).

17.     Several years after Oxy and Andes entered into the Oxy-Andes Farmout Agreement, Ecuador threatened to expropriate Oxy's property and terminate Oxy's right to continue its oil exploration activities.

18.     In light of this threat, Oxy and *Andes*, not Encana, entered into an amendment of the Oxy-Andes Farmout Agreement (the "Oxy-Andes Amendment"). The Oxy-Andes Amendment, by its terms, "constitutes an amendment of the [Oxy-Andes] Farmout Agreement" and, "[e]xcept as specifically provided in [the Oxy-Andes Amendment], the [Oxy-Andes] Farmout Agreement . . . *remain[s] in full force and effect*." Ex. B § 4 (emphasis added).

19.     The Oxy-Andes Amendment authorized Oxy to pursue claims on behalf of Andes to recover the losses associated with Ecuador's threatened actions. It also required Andes to reimburse Oxy for 40% of the expenses necessary to recover the loss sustained by both Oxy and Andes as a result of Ecuador's actions, and, in exchange, Oxy agreed to share with Andes 40% of that recovery.

**Without Oxy's Written Consent, Andes Purported to Assign Rights To Encana Secretly—
In Violation Of The Andes Anti-Assignment Clause**

20.     A few months after the execution of the Oxy-Andes Amendment, Ecuador followed through on its threats, expropriating Oxy's property and terminating Oxy's right to continue its oil exploration activities.

21.     Within two months, Oxy initiated an arbitration proceeding before the International Centre for Settlement of Investment Disputes (the "ICSID Arbitration") to challenge Ecuador's actions.

22.     Shortly thereafter, Andes and Encana entered into an agreement without Oxy's knowledge (the "Secret Agreement").[3]  In the Secret Agreement, Encana agreed to pay $267 million to Andes, and Andes, in return, purported to "assign to Encana one-half of all amounts recovered . . . on behalf of Andes" by Oxy.  Ex. C § 2(a).

23.     The Secret Agreement expressly states that "[t]he assignment . . . is an assignment *only of the right to receive the foregoing payments*, subject to the foregoing limitations, *and not of any other rights or claims that exist or may exist*."  Ex. C § 2(d) (emphasis added).

24.     Encana and Andes did not want Oxy to know of this purported assignment.  In fact, Encana and Andes expressly provided in the Secret Agreement that "EnCana *shall not provide notice* of such assignment" to Oxy, unless and until certain events were to occur later.  Ex. C § 2(a).

25.     This secrecy provision worked: Oxy had no knowledge of the Secret Agreement for over a decade.

26.     Oxy has never consented to the purported assignment in the Secret Agreement.

**Encana Has Sought To Force Oxy To Arbitrate With Encana, Even Though Encana And Oxy Are Not Parties To An Agreement To Arbitrate**

27.     Oxy continued with the ICSID Arbitration against Ecuador for nine years, seeking to recover on behalf of Andes.

---

[3] After the Oxy-Andes Farmout Agreement was executed, Andes had various owners, including Encana for a few years.  But Encana sold all interests in Andes on February 28, 2006 to Andes Petroleum Company Limited.  Andes and Encana entered into the Secret Agreement six months *after* that sale severed any conceivable affiliate relationship.

5

28.     Oxy initially succeeded in recovering the full amount of loss caused by Ecuador. An annulment committee, however, ultimately concluded that Oxy could not recover on behalf of Andes and reduced the award by 40%, representing Andes's economic interest.

29.     Rather than seek to recover its losses from Ecuador, Andes initiated the Oxy-Andes Arbitration on July 10, 2017 in New York, New York against Oxy, demanding payment of 40% of the ICSID Arbitration award—an award that did not reflect any money recovered on behalf of Andes.

30.     During the Oxy-Andes Arbitration, Oxy learned for the first time that Encana and Andes had entered into the Secret Agreement over a decade earlier.

31.     For over a year, the Oxy-Andes Arbitration continued without Encana.  That changed in October 2018 when Encana attempted to force Oxy to arbitrate with Encana by requesting to intervene in the Oxy-Andes Arbitration, even though Oxy and Encana are not parties to an agreement to arbitrate disputes between them.

32.     Oxy has repeatedly and forcefully objected to being required to arbitrate with Encana (including in the Oxy-Andes Arbitration).

33.     The panel in the Oxy-Andes Arbitration issued a "procedural decision" on February 19, 2019.  Ex. L.

34.     Despite not determining whether Oxy and Encana are parties to an agreement to arbitrate disputes between them, the panel nonetheless has purported to force Oxy to arbitrate with Encana, so that the panel can decide Oxy's "objection to jurisdiction at same time as the merits in a final award."  Ex. L ¶¶ 70, 113.

## Count I
### (Declaratory Judgment)

35.     Oxy repeats and realleges paragraphs 1 through 34 as though fully set forth herein.

6

36.     The New York Contention governs this dispute because, among other things, the purported arbitration agreement arises out of a legal relationship that is considered commercial and is not entirely between citizens of the United States.

37.     Under the New York Convention, no valid arbitration agreement exists—and arbitration is impermissible—unless the party seeking arbitration (here, Encana) can demonstrate that both it and the party against whom arbitration is sought (here, Oxy) *signed* (or exchanged through letters or telegrams), and are *parties to*, an agreement to arbitrate disputes between them.

38.     Oxy and Encana are not signatories or parties to an agreement to arbitrate the present disputes between them. Nor has Oxy exchanged with Encana letters or telegrams that contain an arbitration clause providing for arbitration of disputes between them.

39.     Yet, Encana is attempting to force Oxy to arbitrate, which, if allowed, would cause the irreparable harm of forcing Oxy to arbitrate against a party with which it has not agreed to arbitrate.

40.     Declaratory relief from this Court will resolve this controversy and limit the uncertainties concerning whether Oxy must arbitrate against Encana.

41.     As alleged herein, Oxy has presented a real, substantial, and immediate controversy regarding the rights, duties, and liabilities of the parties.  Oxy, therefore, requests a declaratory judgment from this Court pursuant to 28 U.S.C. §§ 2201-02 and Federal Rule of Civil Procedure 57, stating that Oxy has no obligation to arbitrate Encana's claims.

**Count II**
**(Declaratory Judgment)**

42.     Oxy repeats and realleges paragraphs 1 through 41 as though fully set forth herein.

43.     Even if the Court assumes *arguendo* that the New York Convention does not apply, Encana cannot force Oxy to arbitrate under Chapter 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.

44.     Oxy and Encana are not parties to an agreement to arbitrate disputes between them.

45.     Encana has no right to arbitrate under the putative assignment in the Secret Agreement.

46.     First, it is undisputed that neither Andes nor Encana obtained Oxy's consent for the putative assignment.

47.     Accordingly, the putative assignment is null and void.

48.     Second, Encana did not agree to be expressly bound by the Oxy-Andes Farmout Agreement.  This independently forecloses Encana's claim that it is an assignee of rights under the Oxy-Andes Farmout Agreement.

49.     Third, the Secret Agreement did not even purport to transfer Encana any rights against Oxy.  Rather, the Secret Agreement purports to give Encana only rights to recover payments from Andes, stating that "[t]he assignment . . . is an assignment only of the right to receive the foregoing payments, subject to the foregoing limitations, and *not of any other rights or claims* that exist or may exist."  Ex. C § 2(d) (emphasis added).

50.     Simply put, nothing justifies Encana's attempts to arbitrate against Oxy.

51.     Yet Encana is attempting to force Oxy to arbitrate, which, if allowed, would cause the irreparable harm of forcing Oxy to arbitrate against a party with which it has not agreed to arbitrate.

52.     Declaratory relief from this Court will resolve this controversy and limit the uncertainties concerning whether Oxy must arbitrate against Encana.

53.     As alleged herein, Oxy has presented a real, substantial, and immediate controversy regarding the rights, duties, and liabilities of the parties.  Oxy, therefore, requests a declaratory judgment from this Court pursuant to 28 U.S.C. §§ 2201-02 and Federal Rule of Civil Procedure 57, stating that Oxy has no obligation to arbitrate Encana's claims.

## Count III
## (Permanent Injunction)

54.     Oxy repeats and realleges paragraphs 1 through 53 as though fully set forth herein.

55.     Unless Encana is enjoined from forcing Oxy to arbitrate, Oxy will suffer the irreparable harm of having to arbitrate against a party with which it has not agreed to arbitrate.

56.     Oxy has no adequate remedy at law because, among other things, any post-arbitration challenge by Oxy to an arbitrator's award would still require Oxy to defend itself in an arbitration proceeding to which it did not consent to arbitrate claims asserted by Encana.

57.     Encana will suffer no irreparable harm in the event an injunction issues.

58.     The balance of equities weighs in favor of an injunction.

## PRAYER FOR RELIEF

**WHEREFORE**, Oxy prays for relief as follows:

  i.    an order declaring that Encana cannot force Oxy to arbitrate against Encana;

  ii.   an order enjoining Encana from pursuing arbitration against Oxy; and

  iii.  an order granting any other relief as may be just and proper.

Dated:   February 25, 2019        Respectfully submitted,
         New York, NY
                                  SELENDY & GAY PLLC

                        By:   _____
                                  David Elsberg
                                  Michael Duke
                                  SELENDY & GAY PLLC
                                  1290 Avenue of the Americas
                                  New York, NY 10104
                                  Telephone: (212) 390-9000
                                  E-mail: delsberg@selengygay.com
                                          mduke@selendygay.com

                                  *Attorneys for Occidental Exploration and Pro-
                                  duction Company*

10